*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LAJUANA CHERYL ISAAC, D.D.S.

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

        Petitioner-Appellee,

v

LAJUANA CHERYL ISAAC, D.D.S.,

        Respondent-Appellant.

UNPUBLISHED
November 17, 2022

No. 359723
Board of Dentistry
LC No. 21-001212

Before:  M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Respondent-appellant, LaJuana Cheryl Isaac, D.D.S., appeals as of right a December 12, 2021 final order of discipline entered by the Board of Dentistry's Disciplinary Subcommittee (BDDS), part of the Bureau of Professional Licensing (BPL) in the Department of Licensing and Regulatory Affairs (LARA).  For the reasons stated in this opinion, we affirm.

## I.  BASIC FACTS

On April 14, 2020, the BDDS issued an earlier final order pertaining to Isaac.[1]  In this April order, the BDDS stated that, in January 2019, LARA had charged Isaac with violating the Public Health Code, MCL 333.1101 *et seq*.  The BDDS noted that a hearing took place before an administrative law judge (ALJ) and that the BDDS had accepted the ALJ's findings and conclusions.  The BDDS concluded that Isaac was subject to discipline under MCL 333.16221(a), (b)(*i*), and (h).  MCL 333.16221 states, in pertinent part:

---

[1] Appellant did not appeal the April order, which was a final order.  See MCL 333.16237(6).

Subject to section 16221b, the department shall investigate any allegation that 1 or more of the grounds for disciplinary subcommittee action under this section exist, and may investigate activities related to the practice of a health profession by a licensee, a registrant, or an applicant for licensure or registration. The department may hold hearings, administer oaths, and order the taking of relevant testimony. After its investigation, the department shall provide a copy of the administrative complaint to the appropriate disciplinary subcommittee. The disciplinary subcommittee shall proceed under section 16226 if it finds that 1 or more of the following grounds exist:

(a) Except as otherwise specifically provided in this section, a violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully engage in the practice of the health profession.

(b) Personal disqualifications, consisting of 1 or more of the following:

(*i*) Incompetence.

* * *

(h) A violation, or aiding or abetting in a violation, of this article or of a rule promulgated under this article.

The BDDS put Isaac on probation for 1 to 60 days and ordered her to comply with the Public Health Code and to complete three hours of continuing education in the area of ethics and three hours in the area of documentation. The continuing-education classes were to be preapproved. The BDDS also assessed a fine of $2,000 and ordered that Isaac pay restitution to a patient for an incomplete partial denture. The sanctions were issued in connection with Isaac's inadequate charting and her failure to repair a partial denture for a patient after multiple requests. The order stated that Isaac would be taken off probation if she paid the fine and restitution, did not violate the Public Health Code, and provided satisfactory evidence of the completion of the continuing-education courses. The fine and restitution were to be paid within six months. The order further stated that the BDDS could take disciplinary action if Isaac did not comply with the terms of the order.

On September 27, 2021, the BPL issued a first superseding administrative complaint (FSAC), stating that Isaac had not submitted proof of completing the continuing-education courses or of paying the fine and restitution and had violated the April order. The FSAC also stated that, on September 7, 2021, Isaac sent "several obscene emails" to LARA. The FSAC indicated that the e-mails contained the following statements:

a. "please send me the names of director of monitoring and board of dentistry."

b. "Every hour I am awake I will pray his soul never sees heaven in the name of Jesus[.]"[]

c. "I hope/pray the folks in monitoring have a heart attack or a stroke and drop dead."

d. "They are full of shit . . . I hope the folks in monitoring drop dead."

e. . . . "That mf is playing games. I will pray daily he drops dead."

f. "The board chairman is an asshole . . . praying that mother fucker has a heart attack or stroke."

g. "What is the reason that that SOB will not accept a course offered by the University of Michigan that the school recognized as fulfilling the state ethics requirement? What is his name so I can pray his soul never sees the gates of heaven!"

The FSAC stated that Isaac was subject to discipline under MCL 333.16221(h), and also under MCL 333.16221(b)(*vi*) as viewed in connection with MCL 338.41(1). MCL 333.16221(b)(*vi*) refers to a "[l]ack of good moral character." The definition of "good moral character" in MCL 333.16104(6) refers to the definition of that phrase in MCL 338.41 through MCL 338.47. MCL 338.41(1) states:

> The phrase "good moral character", when used as a requirement for an occupational or professional license or when used as a requirement to establish or operate an organization or facility regulated by this state in a statute of this state or administrative rules promulgated under a statute of this state, means the *propensity on the part of an individual to serve the public in the licensed area in a fair, honest, and open manner*. [Emphasis added.]

The FSAC noted that Isaac, in accordance with MCL 333.16231(8), had 30 days to respond in writing to the allegations in the complaint; the response could be sent by regular mail or by e-mail. The FSAC also stated that, under MCL 333.16192(2), Isaac "is deemed to be in receipt of the complaint 3 days after the date of mailing listed in the attached proof of service." The complaint, in accordance with MCL 333.16231(9), indicated that if Isaac did not respond within 30 days, she would be deemed to have admitted the allegations in the complaint, and LARA would refer the matter to the BDDS to impose a sanction.

On December 13, 2021, the BDDS issued the final order at issue in the present appeal. The BDDS stated that Isaac had failed to provide a written response to the FSAC within 30 days and that the subcommittee was, therefore, imposing sanctions. It stated that Isaac's license was suspended but would be reinstated, under a period of probation, if she underwent evaluations, complied with the April order, and paid a $5,000 fine. Isaac was also to be subject to monitoring if such monitoring was deemed necessary by the Health Professional Recovery Program.

-3-

## II. STANDARD OF REVIEW

No hearing was required or conducted in this case, which was based on implied admissions.

> When an agency makes a decision without a contested case hearing, the trial court[2] must review the agency's or officer's decision to determine whether the decision was authorized by law. An agency's decision is not authorized by law if it violates a statute or constitution, exceeds the statutory authority or jurisdiction of the agency, is made after unlawful procedures that result in material prejudice, or is arbitrary and capricious. Courts—including trial courts reviewing an agency's decision—review de novo issues of constitutional law and statutory construction. [*Oshtemo Charter Twp v Kalamazoo Co Rd Comm*, 302 Mich App 574, 582-583; 841 NW2d 135 (2013) (citations omitted; emphasis added.]

## III. ANALYSIS

MCL 333.16231(9) states:

> The department *shall* treat the failure of an applicant, licensee, registrant, or individual to respond to a complaint within the 30-day period set forth in subsection (8) as an admission of the allegations contained in the complaint. The department shall notify the appropriate disciplinary subcommittee of the individual's failure to respond and shall forward a copy of the complaint to that disciplinary subcommittee. The disciplinary subcommittee may then impose an appropriate sanction under this article, article 7, or article 8. [Emphasis added.]

Because Isaac did not respond within 30 days to the FSAC, LARA was required to treat the allegations in the complaint as admissions. As noted, the FSAC alleged that Isaac had not submitted proof of completing the continuing-education courses or of paying the fine and restitution and had violated the April order. In addition, the FSAC alleged that Isaac had sent "several obscene emails" to LARA. The FSAC alleged that Isaac was subject to discipline under MCL 333.16221(h), and also under MCL 333.16221(b)(*vi*).

The BDDS was empowered to impose sanctions on the basis of the allegations and admissions. MCL 333.16231(9). Isaac's appellate briefing is focused, in large part, on whether LARA placed unreasonable standards on her for the continuing-education requirement, but the time to make this argument was during the 30-day period stated in the FSAC. The BDDS followed the law when it complied with the "admission" mandate of MCL 333.16231(9). See *Oshtemo Charter Twp*, 302 Mich App at 582-583. Thus, there is no error.

To the extent Isaac may be arguing that the decision to impose sanctions was arbitrary and capricious, see *id*. at 583, such an argument is unavailing in light of the admissions and other

---

[2] Under MCL 333.16237(6), "A final decision of a disciplinary subcommittee rendered on or after January 1, 1995 may be appealed only to the court of appeals." Accordingly, no "trial court" is involved here.

circumstances. The December final order indicates that Isaac was subject to discipline under MCL 333.16221(b)(*vi*) and (h). MCL 333.16221(h) speaks to discipline issued on the basis of "[a] violation, or aiding or abetting in a violation, of this article or of *a rule promulgated under this article*," and Mich Admin Code, R 338.1632, states that "[a]n applicant, licensee, or registrant must comply with a final order issued by a disciplinary subcommittee, board, or task force." (Emphasis added.) "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott v Civil Serv Comm*, 298 Mich App 158, 162; 825 NW2d 674 (2012). The conclusion that Isaac failed to comply with the April order and should, therefore, be subject to discipline under MCL 333.16221(h) was not arbitrary and capricious.

As for MCL 333.16221(b)(*vi*), the allegation was that Isaac lacked "the propensity . . . to serve the public in the licensed area in a fair, honest, and open manner." See MCL 338.41(1). Given the crude and unprofessional manner in which Isaac communicated with LARA, given that she repeatedly wished death upon persons involved in her case, and given that she did not prove that she had rectified the issues leading to the initial disciplinary proceedings, the conclusion that Isaac should be subject to discipline under MCL 333.16221(b)(*vi*) was not arbitrary and capricious. It is a reasonable inference that Isaac lacked "the propensity . . . to serve the public in the licensed area in a fair, honest, and open manner." MCL 338.41(1); see also MCL 333.16226 (discussing types of sanctions).

In addition, the extent of the sanctions imposed was not arbitrary and capricious in light of the history of the proceedings.

In her supplemental brief on appeal, Isaac states that she was not notified of "a hearing." It is not clear to what "hearing" she is referring. She may be referring to the administrative hearing held in advance of the April order. But that hearing is not at issue in the present appeal. In addition, Isaac mentions this unspecified "hearing" in the "facts" portion of her supplemental brief, but *she does not make an argument related to it*. She argues about due process, but only in connection with "the Amendment eligibility criteria." Isaac has not developed anything for this Court to review in connection with this "hearing." See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted).

In her reply brief on appeal, Isaac refers to not having received a "consent order." Yet, the FSAC was not a consent order. And to the extent that Isaac goes on to argue that this alleged lack of notice resulted in a violation of her due-process rights, "[r]aising an issue for the first time in a

reply brief is not sufficient to present the issue for appeal." *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012).[3]

Isaac also states in her reply brief that "the section of the dentistry act relied upon by the Board as authority for suspension of her license is so lacking in definitive standards as to be violative of . . . due process." But it is unclear to what "section of the dentistry act" she is referring. Moreover, her argument is another attempt to raise a new issue by way of a reply brief. See *id.*

Isaac additionally argues about fraud and about racial and gender discrimination. But she points to no evidence in the record in support of any such fraud or discrimination. An issue not properly briefed on its merits is considered abandoned. *Wilson*, 457 Mich at 243. Such abandonment also applies to a large number of cursory statements that Isaac makes throughout her briefing, including in her statements of questions presented for appeal. This Court will not expend its resources addressing a multitude of undeveloped, unsupported, and bare statements made by Isaac.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ Sima G. Patel

---

[3] The FSAC explicitly referred to an "attached proof of service," and MCL 333.16192(2) states, in part, that "if service is by mail, service is effective 3 days after the date of mailing. . . ." Therefore, it appears that Isaac was afforded due process in this case.